UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

LIBERTY MUTUAL INSURANCE COMPANY,

Plaintiff,

05 Civ. 3420 (RWS)

- against -

O P I N I O N

PRECISION VALVE CORPORATION,

Defendant.

----------------------------------------X

A P P E A R A N C E S:

JAFFE & ASHER LLP
Attorneys for Plaintiff
600 Third Avenue
New York, NY 10016
By: MARSHALL T. POTASHNER, ESQ.
    REBECCA N. REDER, ESQ.
    Of Counsel

MARSHALL, CONWAY & WRIGHT P.C.
Attorneys for Defendant
116 John Street, 4th Floor
New York, NY 10038
By: CHRISTOPHER T. BRADLEY, ESQ.
    Of Counsel

11/30/05

**Sweet, D.J.,**

Plaintiff Liberty Mutual Insurance Company ("Liberty Mutual") has moved pursuant to Rule 12(f), Fed. R. Civ. P., to strike the Seventh, Ninth, and Tenth Affirmative Defenses of defendant Precision Valve Corporation ("Precision"). The motion is converted to a motion for summary judgment and for the reasons set forth below is granted with leave to the parties to make any additional submissions within twenty days or at such other time agreeable to the parties or the Court.

## Prior Proceedings

Liberty Mutual filed its complaint on March 31, 2005 seeking to recover retrospective premiums alleged to have become due from Precision on several insurance policies. Notice of the retrospective premium was issued on January 17, 2005.

Precision filed its answer on June 6, 2005 and has opposed the Fourth Claim of Relief in the Liberty Mutual complaint, which seeks retrospective premiums based on the 1992-93 insurance policy in the amount of $376,227 for the policy period June 1, 1992 to June 1, 1993. Precision asserted a statute of limitations defense (Seventh Affirmative Defense) and has alleged that Liberty Mutual violated its duty of good faith and fair dealing (Ninth and Tenth Affirmative Defenses). It alleges that Liberty Mutual

1

mistakenly under-reserved the claim of John Mazur, an employee of Precision, under Workers Compensation and Employers Liability policy No. WC1-121-057917-012 (the "Mazur Claims") and that when Liberty Mutual caught its mistake in April 2004, it increased the reserves of the Mazur claim, which resulted in the retrospective premium at issue in the Fourth Claim for Relief.[1]

The Liberty Mutual motion to strike with affidavit, the opposition with affidavit, and the reply with affidavit were marked fully submitted on July 27, 2005.

## The Facts

The facts are set forth in the affidavit of Russell B. Dame, senior receivables analyst of Liberty Mutual, sworn to July 20, 2005 (the "Dame affidavit") submitted in reply to certain correspondence and exhibits submitted by Christopher T. Bradley, Esq., counsel to Precision, in opposition to the motion. The facts are undisputed except as noted.

John Mazur suffered two separate heart attacks at work, the first on December 10, 1992, and another on April 5, 1993. The

---

[1] Although not at issue on this motion to strike, Liberty Mutual's premium claims arising from policy No. WC1-121-057917-012 relate to more than the Mazur claim. There have been increases in ratable incurred losses associated with the claim of Bettye Hayford. Precision also has not paid premiums associated with this claim.

2

two heart attacks are listed as separate claims, each subject to separate $250,000 deductibles. On November 6, 1998, Liberty Mutual reduced its reserve on the Mazur claims after conducting a retrospective premium adjustment. The reserves were decreased by $229,398 for the first claim and $221,010 for the second claim resulting in a $321,437 credit.

On April 9, 2004, Liberty Mutual informed Precision of the computation of the medical reserves for the Mazur claims. According to Precision, Liberty Mutual incorrectly set reserves for the first 104 weeks following the occurrence of Mazur's claims, the later of which occurred on April 5, 1993, and Liberty Mutual erroneously reduced its medical reserve on November 6, 1998. The 104 week period ended in April 1995.

According to the Dame affidavit, the premium agreement for policy No. WC1-121-057917-012 is included in the policy as the "Retrospective Premium Endorsement - One Year Plan - Multiple Lines," which is endorsement No. 34.

As set forth on page two of the endorsement, under the heading "Retrospective Premium Formula," the premium is determined by the following formula:

1. Retrospective premium is the sum of basic premium, converted losses, and taxes, plus the excess loss premium and retrospective development premium elective elements if you chose them.

The formula includes "converted losses," which the endorsement defines as follows:

4. A converted loss is an incurred loss multiplied by a percentage called the loss conversion factor. The loss conversion factor is shown in the Schedule.

The endorsement defines "incurred losses," in relevant part, as follows:

3. Incurred losses are all amounts we pay or estimate we will pay for losses and following expenses; ...

According to Liberty Mutual, the determination of retrospective premiums is not only based upon what Liberty Mutual "estimate[s] we will pay for losses" or "reserves," but is also based upon "all amounts we pay." These two amounts are added together to determine the "incurred losses."

In two letters, both dated April 9, 2004, Liberty Mutual's claims handler, Heppi Lauro, uses the word "reserves," which, according to the Dame affidavit, includes paid amounts and estimates.

The premium calculation by Liberty Mutual was based on estimates and upon actual payments.

4

As set forth under the heading "Premium Calculations and Payments," pursuant to the endorsement, a retrospective premium is to be calculated using claims information valued as of the date six months after the end of the policy period, in this case, December 1, 1993, and annually thereafter. The endorsement provides, in relevant part, as follows:

> 1. We will calculate the retrospective premium using all incurred losses we have as of a date six months after the rating plan period ends and annually thereafter.

The endorsement provides the premium is not due until after calculation of the retrospective premium, stating as follows:

> 3. After each calculation of retrospective premium, you will pay promptly the amount due us, or we will refund the amount due you. Each insured is responsible for the payment of all standard premium and retrospective premium calculated under this endorsement.

Liberty Mutual's Fourth Claim for Relief seeks recovery of premiums arising from the Twelfth Retrospective Premium Adjustment, which is based upon incurred losses valued as of December 1, 2004. The statement was issued on January 17, 2005.

The Liberty Mutual Claims Department did not include all of the medical costs related to John Mazur's April 6, 1993 heart transplant in the incurred losses until April 6, 2004, and they were not factored in the prior retrospective premium adjustments

5

but were included in the incurred losses valued as of December 1, 2004.

The premium endorsement provides that the adjustments continue annually until both Liberty Mutual and Precision agree it is final, stating as follows:

2. After a calculation of retrospective premium, you and we may agree that it is the final calculation. No other calculation will be made unless there is clerical error in the final calculation.

There has been no agreement to terminate the retrospective premium adjustment statement calculations, and Precision has not complained about the prior eleven adjustments.

## The Motion Is Converted To A Motion For Summary Judgment

The issue between the parties with respect to the Seventh Affirmative Defense, the statute of limitations defense, turns upon whether the action is considered as a contract action, which is Liberty Mutual's position, or as an action based upon mistake, which is Precision's position. As to the Ninth and Tenth Affirmative Defenses the issue turns upon the conduct of Liberty Mutual in handling claims and reserves. Both parties have submitted facts outside of the pleadings and certain of these facts are necessary to the resolution of the issues presented. For this reason, the motion has been converted to a motion for summary judgment.

6

Whether to consider additional materials and thereby convert a Rule 12 motion into a summary judgment motion is within the sound discretion of the Court. See Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999) ("If a judge looks to additional materials, the motion should be converted into a motion for summary judgment"); Diezcabeza v. Lynch, 75 F. Supp. 2d 250, 256 (S.D.N.Y. 1999) ("The Court may, at its discretion, consider the affidavits attached to the motion and thereby treat the instant motion as one for summary judgment").

Since the Court has taken cognizance of matters outside the pleadings, this motion will be treated as one made solely pursuant to Rule 56.

Pursuant to Rule 56, summary judgment may be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); SCS Communications, Inc. v. Herrick Co., Inc., 360 F.3d 329, 338 (2d Cir. 2004). The court will not try issues of fact on a motion for summary judgment, but, rather, will determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

Summary judgment is appropriate where the moving party has shown that "little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994) (internal citations omitted). If, however, "'as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'" Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004) (quoting Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996)).

Because of the conversion of the Rule 12(f) motion to a Rule 56 motion, the parties are granted leave to make additional submissions in accordance with Local Rule 56.1 on a schedule to be agreed upon or, in default of an agreement, to exchange submissions in twenty days with any reply submissions ten days thereafter.

## The Seventh Affirmative Defense Is Stricken

N.Y. C.P.L.R. § 213(1), which provides for a six-year statute of limitations, applies to breach of contract claims. Russack v. Weinstein, 291 A.D.2d 439, 441, 737 N.Y.S.2d 638, 640

8

(2d Dep't 2002). Where the claim is based upon money due and owing under a contract, the statute of limitations does not begin to run until payment is due and been rejected. See Russack, at 440-41, 737 N.Y.S.2d at 639-40 (holding that although contract was made in January 1987, the statute of limitations did not begin to run until July 1999 when payment was due); Boeckmann & Associates v. Board of Educ., Hempstead Union Free Sch. Dist. No. 1, 207 A.D.2d 773, 775, 616 N.Y.S.2d 395, 397 (2d Dep't 1994) (holding that statute of limitations begins to run when the claimant's bill is expressly or constructively rejected).

In Continental Casualty Co. v. Stronghold Ins. Co., Ltd., 77 F.3d 16, 19 (2d Cir. 1996), a reinsured brought an action against reinsurers for breach of contract after the reinsurers refused to pay. In the early 1980's, the reinsured settled some underlying claims but waited several years before tendering the claims to the reinsurers. On various dates between 1987 and 1990, the reinsurers refused to pay. In November 1991, more than six years after it settled the last of the underlying claims, the reinsured sued the reinsurers. In determining whether the reinsured's claims were barred by the statute of limitations, the Second Circuit noted that the elemental issue was "when were its losses due and payable under the reinsurance policies." Continental Casualty Co., at 20. The Second Circuit held that the reinsurers were not in breach of their contract until they rejected

9

the demand for payment of the claims from the reinsurers. Id. at
21.

The retrospective premium adjustments and invoice at
issue herein were issued to Precision on or about January 17, 2005,
and the premiums first became due and owing to Liberty Mutual by
Precision at that time. According to Liberty Mutual, the statute
of limitations did not begin to run until February 6, 2005. See
Continental Casualty Co., 77 F.3d at 19-21; Russack, at 440-41, 737
N.Y.S.2d at 639-40; Boeckmann & Associates, at 775, 616 N.Y.S.2d at
397.

Liberty Mutual also has contended that N.Y. C.P.L.R. §
206(d) applies to the case at bar. C.P.L.R. § 206(d) provides as
follows:

> (d) **Based on account.** In an action based upon a mutual,
> open and current account, where there have been recipro-
> cal demands between the parties, the time within which
> the action must be commenced shall be computed from the
> time of the last transaction in the account on either
> side.

The account statement submitted with the complaint shows reciprocal
demands between Precision and Liberty Mutual in the form of credits
and debits on the account. The last transaction on this account
was on January 17, 2005.

Precision has characterized Liberty Mutual's Fourth Claim for Relief as "a classic action for mistake." A cause of action for mistake seeks return of monies paid to the defendant under a mistake of fact, which mistake was material to the plaintiff's decision to pay. See West Washington Cut Meat Ctr. v. Solomon, 260 A.D. 741, 24 N.Y.S.2d 209, 211 (1st Dep't 1940); Nigro v. Caserta, 16 Misc. 2d 355, 358, 184 N.Y.S.2d 1001, 1005 (N.Y. Sup. 1959); U.S. v. Zenith-Godley Co., 180 F. Supp. 611, 615 (S.D.N.Y. 1960); U.S. v. Sforza, No. 00 Civ. 1307 (AGS), 2000 WL 1818686, *5 (S.D.N.Y. Dec. 12, 2000).

Here, Liberty Mutual has not alleged that it mistakenly paid Precision any monies and does not seek recovery of monies improperly paid to Precision. According to Liberty Mutual, it suffered damages as a result of Precision's breach of its contract to pay retrospective premiums. These allegations constitute a breach of contract claim for relief. See Saffire Corp. v. Newkidco, LLC, 286 F. Supp. 2d 302, 306 (S.D.N.Y. 2003).

The cases Precision has cited are not persuasive. In Allen v. First Wallstreet Settlement Corp., 130 A.D.2d 824, 514 N.Y.S.2d 726 (3d Dep't 1987), a brokerage firm alleged that it erroneously credited 400 shares of stock to a customer and sought return of those shares. No breach of contract was alleged. In Nichols v. Regent Properties Inc., 49 A.D.2d 847, 373 N.Y.S.2d 613 (1st Dep't 1975), the plaintiff sought reformation of a lease

11

agreement based on an alleged mutual mistake. Similarly, Walker v. Jastremski, 159 F.3d 117 (2d Cir. 1998), does not concern a mistake cause of action and did not apply New York law.

Even if Liberty Mutual's Fourth Claim for Relief could be construed as sounding in mistake, the statute of limitations defense should still be stricken if the claim for relief could also be construed as sounding in contract or based upon an account. "[I]f alternative theories can arguably support a claim, and any one of them carries a limitation period which would keep the claim alive, the claim should be sustained as timely . . . ." Allen at 826, 514 N.Y.S.2d at 728. See also Frank Management, Inc. v. Weber, 145 Misc. 2d 995, 999, 549 N.Y.S.2d 317, 320 (N.Y. Sup. 1989).

Therefore, the Seventh Separate and Complete Affirmative Defenses is dismissed since Liberty Mutual's claim is not barred by the applicable statute of limitations.

## **The Ninth And Tenth Affirmative Defenses Are Stricken**

Liberty Mutual has relied upon cases which have held that a policyholder may not assert a defense or allege a claim for retrospective premiums by attacking the handling, defending, or settling of claims. See Insurance Co. of Greater N.Y. v. Glen Haven Residential Health Care Facility, 253 A.D.2d 378, 379, 676

12

N.Y.S.2d 176, 177 (1st Dep't 1998); Commissioners of the State Ins. Fund v. J.D.G.S. Corp., 253 A.D.2d 368, 676 N.Y.S.2d 575 (1st Dep't 1998); Liberty Mut. Ins. Co. v. Thalle Constr. Co., Inc., 116 F. Supp. 2d 495, 501-02 (S.D.N.Y. 2000). The First Department has stated in Insurance Co. of Greater N.Y. v. Glen Haven:

> New York has never recognized a cause of action or defense for breach of an insurer's implied covenant of good faith and fair dealing where, as here, it is alleged that an insurer's failure to reasonably investigate claims made against the insured results in an increased retrospective premium. (Citation omitted.)

Insurance Co. of Greater N.Y. v. Glen Haven, at 379, 676 N.Y.S.2d at 177; see also Commissioners of the State Insurance Fund v. Beyer Farms, Inc., 15 A.D.3d 273, 273, 792 N.Y.S.2d 380, 381 (1st Dep't 2005) This is because "an insurer's method of conducting its investigation is 'a business judgment within its discretion.'" Thalle at 502 (citing Glen Haven, at 379, 676 N.Y.S.2d at 177); see Beyer Farms, 15 A.D.2d at 273, 792 N.Y.S.2d at 381.


In Thalle, the insurer brought suit against the policy-holder to collect retrospective insurance premium. The policyhold-er defended the claim by arguing that the premium arose because the insurer had mishandled a claim, forcing the insurer to agree to an improper settlement. The policy specifically alleged the insurer (1) lost its claims file and video tape evidence; (2) failed to take witness statements or obtain damage estimates; and (3) failed to ensure that the insurer's retained experts completed a thorough

**13**

investigation. Thalle, 116 F. Supp. 2d at 497. The United States District Court, in granting summary judgment in favor of the insurer, held that this defense was not cognizable under New York law, reasoning as follows:

[A]ccording to the Appellate Division of the First Department, 'New York has never recognized a cause of action or defense for breach of implied covenant of good faith and fair dealing where, as here, it is alleged that an insurer's failure to reasonably investigate claims made against the insured results in an increased retrospective premium.' Insurance Co. of Greater New York v. Glen Haven Residential Health Care Facility, 253 A.D.2d 378, 676 N.Y.S.2d 176, 177 (1st Dep't 1998). See Commissioners of the State Ins. Fund v. J.D.G.S. Corp., 253 A.D.2d 368, 676 N.Y.S.2d 575, 576 (1st Dep't 1998); Hartford Accident and Indem. Co. v. Coastal Dry Dock and Repair Corp., 97 A.D. 724, 468 N.Y.S.2d 876, 879 (1st Dep't 1983); but cf. Liberty Mut. Ins. Co. v. Star Industries Inc., No. 96 Civ 0644 (JG), 1997 WL 1068692, at *5 (E.D.N.Y. Oct. 10, 1997) (considering the burdens of proof associated with the implied duty of good faith and fair dealing in connection with the increased retrospective premiums, without explicitly recognizing such cause of action exists). Therefore, under New York law, policyholders may not defend claims for recovery of retrospective premiums by attacking the investigation, defense, or settlement of an underlying claim. As the First Department held in Glen Haven, an insurer's method of conducting its investigation is 'a business judgment within its discretion.' 676 N.Y.S.2d at 177.

Id. at 501-02.

In Commissioner of the State of New York Ins. Fund v. Mystic Transportation, Inc., No. 400102/00 (N.Y. Sup. Ct., Jan. 5, 2004), the insured defendant asserted as a defense to a retrospective premium claim that the insurer mishandled claims and that it gave the insurer timely notice of its objections to the insurer's

**14**

alleged mishandling of claims. The New York Supreme Court rejected these defenses, and the cases cited by the insured, holding as follows:

These cases, however, cannot be interpreted as permitting an insured to challenge an insurer's business judgment in the investigation, defense and settlement of a claim[] of an insured's employees by simply asserting a timely objection. Such an interpretation would effectively vitiate the rule reserving the right to settle and negotiate such claims to the insurer's business judgment.

Mystic Transportation at *9. As such, the court in Mystic Transportation dismissed the insured's three affirmative defenses that alleged the insurer's mishandling of the defense of claims was a breach of the implied covenant of good faith and fair dealing, and resulted in an increase of premiums. Id.

In L.C. Whitford Co., Inc. v. Liberty Mut. Ins. Co., 01 Civ. 0277 (W.D.N.Y. Feb. 6, 2002), a policyholder commenced an action against Liberty Mutual alleging that mishandling of a workers' compensation claim resulted in a premium overcharge on a retrospectively-rated policy. The policyholder specifically alleged that Liberty Mutual, "as the workers' compensation carrier for Whitford, improperly handled the Harrington claim, resulting in an award of money to Harrington and an increase in the retrospective premiums that Whitford was obligated to pay to Liberty for workers' compensation insurance coverage." Id. at *2. Liberty Mutual moved to dismiss the complaint pursuant to Rule 12(b)(6),

Fed. R. Civ. P. The district court dismissed the policyholder's breach of contract claim, reasoning as follows:

> [B]ased on the authority of Thalle, as well as other longstanding case law from the State of New York, it is my opinion that plaintiff's claim seeking relief for a breach of the implied warranty of good faith and fair dealing is not cognizable and is therefore dismissed.

Id. at *6.

Under the authorities cited above, Precision's Ninth and Tenth Affirmative Defenses are insufficient as a matter of law.

According to Precision, Liberty Mutual stated in its letter dated April 6, 1999 to Precision from its claims manager that it failed to include the cost of a heart transplant performed when setting the reserve for the two Mazur claims. According to Precision, this does not meet the definition of "reserves" because Liberty Mutual is changing a reserve based on an event already paid years, possibly a decade, in the past. Reserves are defined under N.Y. Ins. Law § 1303 as follows:

> Every insurer shall, except as provided in section one thousand three hundred four of this article and subject to specific provisions of this chapter, maintain reserves in an amount estimated in the aggregate to provide for the payment of all losses or claims incurred on or prior to the date of statement, whether reported or unreported, which are unpaid as of such date and for which such insurer may be liable, and also reserves in an amount estimated to provide for the expense of adjustment or settlement of such losses or claims.

16

N.Y. Ins. Law § 1303 (McKinney's 2000). N.Y. Ins. Law § 4117(b)(1) provides that reserves shall include "the aggregate estimated amounts due or to become due on account of all known losses and claims and loss expenses incurred but not paid . . ."

Precision, in opposing this motion to strike, has cited cases concerning situations where an insurer failed to settle a claim within policy limits and thus exposed its insured to a judgment in excess of the limits. See Pavia v. State Farm Mut. Auto. Ins. Co., 82 N.Y.2d 445, 453-54, 605 N.Y.S.2d 208, 211-12 (1993). New York does not apply the same "bad faith" analysis to claims for recovery of retrospective premiums. See, e.g., Insurance co. of Greater N.Y. v. Glen Haven Residential Health Care Facility, 253 A.D.2d 378, 379, 676 N.Y.S.2d 176, 177 (1st Dep't 1998); Commissioners of the State Ins. Fund v. J.D.G.S. Corp., 253 A.D.2d 368, 676 N.Y.S.2d 575 (1st Dep't 1998); Liberty Mut. Ins. Co. v. Thalle Constr. Co., Inc., 116 F. Supp. 2d 495, 501-02 (S.D.N.Y. 2000); Commissioners of the State Ins. Fund v. Beyer Farms, Inc., at 273, 792 N.Y.S.2d 380, 381.

Precision has contended that "[t]he cases cited by Liberty were decided on motions for summary judgment after the court examined the facts of the case." (Opp. Mem. p. 9). However, in L.C. Whitford Co., Inc. and Mystic Transp., Inc., the courts granted motions based solely on the pleadings.

17

Precision also has cited <u>Liberty Mut. Ins. Co. v. Laro</u> <u>Maintenance Corp.</u>, No. 03 Civ. 2603 (SJF) (VVP) (E.D.N.Y. Nov. 13, 2003). There, in the November 13, 2003 decision, the Honorable Sandra J. Feuerstein denied Liberty Mutual's motion to strike, reasoning that "the issue of the legal sufficiency of the defense of an insurer's breach of good faith and fair dealing within the context of increased retrospective premiums involves a question of law that has not clearly been resolved by the courts." <u>Id.</u> at *5. However, in a subsequent decision in that same case, <u>Liberty Mut.</u> <u>Ins. Co. v. Laro Maintenance Corp.</u>, No. 03 Civ. 2603 (SJF) (VVP) (E.D.N.Y. Dec. 29, 2004), Judge Feuerstein held that she must follow the rulings of New York's intermediate appellate courts unless she is convinced by other persuasive data that New York's highest court would decide otherwise. <u>See id.</u> at *16. She further held that New York's Appellate Division made it clear that affirmative defenses based upon breach of the duty of good faith and fair dealing arising from improper claims handling are legally insufficient and that "Laro has failed to offer 'persuasive data' indicating that the New York Court of Appeals would disagree with the holdings of the First Department cases." <u>Id.</u> at *17. The district court thus held, without consideration of the factual proof, that Laro Maintenance Corporation's affirmative defenses based upon breach of the duty of good faith and fair dealing were insufficient as a matter of law. <u>See id.</u> at *15-18.

18

Assuming, arguendo, a defense based upon breach of the duty of good faith and fair dealing was legally viable, the basis for Precision's alleged defenses do not give rise to an inference that Liberty Mutual breached any such duty. In describing the elements of a cause of action for breach of the duty of good faith and fair dealing in the context of a claim for failure to settle within policy limits, the New York Court of Appeals has held as follows:

> [T]he plaintiff must establish that the insurer's conduct constituted a "gross disregard" of the insured's inter-ests -- that is, a deliberate or reckless failure to place on equal footing the interests of its insured with its own interests when considering a settlement offer. In other words, a bad-faith plaintiff must establish that the defendant insurer engaged in a pattern of behavior evincing a conscious or knowing indifference to the [insured's interests]. (Citation omitted).

Pavia v. State Farm Mut. Auto. Ins. Co., at 453-54, 605 N.Y.S.2d 208, 211-12. This is known as the "gross disregard standard." Id. at 454, 605 N.Y.S.2d at 212. As such, conduct amounting to no more than ordinary negligence cannot establish "bad faith." Id. at 453, 605 N.Y.S.2d at 211; see also Brennan v. Mead, 81 A.D.2d 821, 438 N.Y.S.2d 821, 823 (2d Dep't 1981), aff'd, 54 N.Y.2d 811, 443 N.Y.S.2d 652 (1981).

Precision has contended that Liberty Mutual breached the duty of good faith and fair dealing by mistakenly reducing its reserves for the Mazur claim in 1998. Assuming this allegation to

19

be true, Liberty Mutual and not Precision was damaged by the reduction in reserves. Precision would have benefitted by not being invoiced for more retrospective premiums in 1998. Instead, Precision was allowed use of the money until 2005, when the retrospective premiums were invoiced.

Precision's affirmative defenses, even if accepted, cannot support an inference that Liberty Mutual placed its interests above that of Precision. See Thalle, 116 F. Supp. 2d at 502 (while holding that "bad faith" defense does not apply to retrospective premium claims, noted that insurer's conduct caused damage to insurer equal to that suffered by insured). At best, Precision's allegations only support an inference of Liberty Mutual making a mistake or negligence in setting incurred losses for a claim and are insufficient to support a defense based on breach of the duty of good faith and fair dealing.

Under the authorities cited and the New York law enunciated, the Ninth and Tenth Affirmative Defenses are dismissed.

**Conclusion**

The Seventh, Ninth, and Tenth Affirmative Defenses are dismissed.

Leave is granted to the parties to make further factual submissions on a schedule to be determined or agreed upon.

It is so ordered.

**New York, NY**
**November 30, 2005**

ROBERT W. SWEET
U.S.D.J.

21